FILED

2017 Mar-13  PM 02:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:16-cr-00024-MHH-HGD** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **MARK ANTHONY CARLISLE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Defendant Mark Anthony Carlisle is charged in a four-count indictment with coercion or enticement of a minor in violation of 18 U.S.C. § 2422(b) and engaging in activities related to material constituting or containing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and 18 U.S.C. § 2252A(b)(2).  (Doc. 1, pp. 1–3).  On March 28, 2016, Mr. Carlisle filed a motion to suppress all evidence seized pursuant to a search by law enforcement of Mr. Carlisle's residence that occurred on August 6, 2013.  (Doc. 12).  The magistrate judge assigned to the case held a hearing on Mr. Carlisle's motion on April 18, 2016.  (Doc. 23).  On April 22, 2016, the magistrate judge entered a report and recommendation denying Mr. Carlisle's motion.  (Doc. 23).  Mr. Carlisle timely filed an objection to the magistrate's report and recommendation.

(Doc. 24).  The Court held a hearing to explore Mr. Carlisle's objections on October 25, 2016.  (Doc. 29).  For the reasons discussed below, the Court sustains Mr. Carlisle's objection and adopts only part of the magistrate judge's recommendation.

## I.      STANDARD OF REVIEW

A district court may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  A district court reviews legal conclusions in a report *de novo* and reviews for plain error factual findings to which no objection is made.  *Garvey v. Vaughn*, 993 F.2d 776, 779 n. 9 (11th Cir. 1993); *see also LoConte v. Dugger,* 847 F.2d 745, 749 (11th Cir.  1988); *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006).

## II.     BACKGROUND

The facts in this case are undisputed.  On July 31, 2013, a judge for the Circuit Court of Madison County, Alabama issued a search warrant for Mr. Carlisle's home, located at 426 Walnut Grove Road, New Market, Madison County, Alabama 35761.  The warrant authorized local law enforcement officers to search for "computers, cellular telephones or computer-related storage devices found thereon, as further described in Attachment A and Attachment B."  (Doc. 25-1).  Attachment A contains a photo of the residence located at 426 Walnut Grove Road, New Market, Alabama.  (Doc. 25-1, p. 9).  Attachment B contains a description of property to be seized and searched, including, but not limited to:

> Any and all records, documents, journals, and materials pertaining to an electronic solicitation of [a] child by computer and any visual depiction of a minor engaging in sexually explicit conduct, child pornography, child erotica, a sexual interest in children, or sexual activity involving children.
>
> Any and all records, documents, and materials that concern any internet accounts or any internet-related media.
>
> Any and all software that may be utilized to create, receive, distribute, store, modify, conceal, or destroy any of the evidence sought.

(Attachment B - Doc. 25-1, p. 10).  Attachment B also states that "[i]n the execution of this warrant, the agents may seize all computers and computer-related media to be searched later by a qualified examiner in a laboratory or other controlled environment."  (Doc. 25-1, p. 10).

The affidavit in support of the search warrant was submitted by Detective Brendan Morgan of the Hoover Police Department.  (Doc. 25-1, p. 2).  Paragraph 2 of Detective Morgan's affidavit states:

> As will be shown, there is probable cause to believe that Mark Anthony Carlisle engaged in criminal conduct, 'Electronic Solicitation of a Child by Computer' as defined in 13A-6-122 and 'Possession and possession with intent to disseminate obscene matter containing visual depiction of persons under 17 years age' as defined in 13A-12-192 of the Code of Alabama, 1975, by means of communicating with a computer and a cellular telephone that is located at the aforementioned address.

(Doc. 25-1, p. 2).

In his warrant affidavit, Detective Morgan describes the background of the investigation into Mr. Carlisle.  (Doc. 25-1, p. 5).  Detective Morgan's affidavit states that on May 15, 2013, an undercover police detective made contact with Mr. Carlisle

3

in response to an advertisement that Mr. Carlisle placed on Craigslist. (Doc. 25-1, p. 5). According to the warrant affidavit, Mr. Carlisle believed that he was communicating with a parent who was soliciting her minor female child, under age 12, and two minor cousins, a female under age 12 and a male under age 10. (Doc. 25-1, p. 5). The Craigslist advertisement placed by Mr. Carlisle was traced to 426 Walnut Grove, New Market, Madison County, Alabama 35761—which is Mr. Carlisle's residence and the place where the search was executed. (Doc. 25-1, pp. 5–6). The warrant affidavit describes the substance of the on-line communications between Mr. Carlisle and the undercover agent. In the course of roughly ten separate communications between March 23, 2013 and July 6, 2013, Mr. Carlisle describes the sexual conduct he wished to engage in with the minor children. (Doc. 25-1, p. 6). Mr. Carlisle also forwarded a photo of his face and genitals to the undercover agent. (Doc. 25-1, p. 6).

Detective Morgan's affidavit explains that based on his training and experience, "[t]hose who have demonstrated an interest or preference in sexual activity with children or in sexually explicit visual images depicting children are likely to keep secreted, but readily at hand, sexually explicit visual images depicting children." (Doc. 25-1, pp. 7–8). The affidavit also explains that "[p]ersons trading in, receiving, distributing or possessing images or movies of child pornography often have copies of those files on their computer's hard drive or computer-related media." (Doc. 25-1, p. 7).

On August 6, 2013, law enforcement executed the search warrant and seized numerous items from Mr. Carlisle's home, including a Gateway computer, two cell phones, a camera, and several thumb drives, floppy discs and CDs. (Doc. 23, Defendant's Exhibit 2). On August 14, 2013, law enforcement made an image of the Gateway computer's hard drive. (Doc. 23, p. 18). An image is an exact copy of a computer hard drive. (Doc. 23, pp. 18–19). On August 16, 2013, the computer was placed in a property room at the Hoover Police Department; the computer is still there. (Doc. 23, p. 18).

The Hoover Police Department did not complete its forensic analysis of the computer hard drive until October 15, 2014, more than one year after the computer was seized. (Doc. 23, p. 31; Doc. 23, Defendant's Exhibit 3). Testimony reflects that the agent who conducted the initial investigation of this case left the Hoover Police Department for other employment. (Doc. 23, p. 23). The agent's replacement, Detective Morgan, was the individual who would have been responsible for performing forensic analysis of the computer, but he also left his employment with the Hoover Police Department. (Doc. 23, p. 26). Another officer involved in the case, Sergeant Keith Czeskleba, testified that aside from personnel turnover, he could not account for the delay between the time the computer was seized and the forensic analysis of the computer was performed. (Doc. 23, pp. 26, 30).

## III.   DISCUSSION

Mr. Carlisle asserts two arguments in support of his motion to suppress.  First, he contends that the search warrant violates the Fourth Amendment because it is not sufficiently particular to establish probable cause that Mr. Carlisle possessed child pornography.  (Doc. 12, p. 8; Doc. 24, pp. 9–11).  Second, Mr. Carlisle argues that even if the search warrant was valid at its inception, the 441-day delay between law enforcement's seizure of his computer and the forensic analysis of a copy of the hard drive amounts to an unreasonable seizure under the Fourth Amendment.  (Doc. 12, pp. 2–8; Doc. 24, pp. 4–6).  As part of his second argument, Mr. Carlisle argues that the search warrant was not timely executed under Alabama Rule of Criminal Procedure 3.10.  (Doc. 12, pp. 1–2; Doc. 24, pp. 3–4, 8).

### 1.   Particularity of the warrant affidavit

Mr. Carlisle contends that "there is no basis to believe from the affidavit that any of the items sought and/or seized would contain child pornography." (Doc. 12, p. 8).  Mr. Carlisle asserts that "this is an exploratory, general warrant, based upon speculation without any independent investigation" and that "there is no information [contained in the warrant affidavit] that any computers at the residence were used to actually view or download any illicit material." (Doc. 12, p. 8).  The Court disagrees.

Detective Morgan's affidavit states that based on his training and experience, "[t]hose who have demonstrated an interest or preference in sexual activity with children or in sexually explicit visual images depicting children are likely to keep

secreted, but readily at hand, sexually explicit visual images depicting children."
(Doc. 25-1, p. 7).  The warrant affidavit describes how Mr. Carlisle demonstrated an
interest or preference in sexual activity with children by posting an internet
advertisement on Craigslist from his home computer and communicating with an
individual whom he believed was a parent soliciting her minor child and minor niece
and nephew for sexual conduct.  (Doc. 25-1, p. 5).  In addition, Mr. Carlisle indicated
in his communications with the undercover agent the sexually explicit activities he
would like to see the children engage in, with an emphasis on watching them, and Mr.
Carlisle stated that he had previously sought out visual images of sexually explicit
material containing children.  (Doc. 25-1, p. 6).  For example, Mr. Carlisle stated that
"the guy from bham [Birmingham] that used to send me pics of his 6yr old did it
wrong.  He took only pics of her when she was sleeping [b]ut they were hot."  (Doc.
25-1, p. 6).

The Eleventh Circuit has recognized that direct evidence or first-hand
observation of a crime is not required to establish probable cause for a search warrant.
*United States v. Jenkins*, 901 F.2d 1075, 1080–81 (11th Cir. 1990) (quoting *United
States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982) ("'[T]he nexus between the
objects to be seized and the premises searched can be established from the particular
circumstances involved and need not rest on direct observation.'")) (alteration
provided by *Jenkins*); *see also Schaff v. United States*, 2014 WL 3925280, *4 (S.D.
Ga. 2014) (citing *United States v. Davis*, 589 F.2d 904, 906 (5th Cir. 1979) ("Similar

evidence not specified in the warrant can still be seized if it had a sufficient nexus to the crime being investigated.")).   The Eleventh Circuit has also permitted warrant affidavits to draw limited inferences about criminal conduct based on the specialized knowledge and experience of law enforcement.  *Jenkins*, 901 F.2d at 1081.

In *Jenkins*, the warrant affidavit included statements by an experienced FBI officer that individuals who commit theft are likely to keep the stolen items in their homes.  *Jenkins*, 901 F.2d at 1081.   In crediting the statements and finding that probable cause existed for a search of the suspect's home, the Court noted that (1) the affidavit established probable cause that the suspect committed theft and (2) the officer had extensive experience investigating this type of crime.  *Id*. ("The affidavit stated that Agent Gerald L. Jones, the veteran FBI agent who advised Agent Todd about the likely hiding place of the contraband, had spent ten of his seventeen years with the FBI investigating bank robbery/burglary matters.").  "These combined facts would warrant a person of reasonable caution to believe that a search of Jenkins' home would uncover evidence of the theft."  *Id*.

The key question in the probable cause inquiry is whether "there is a fair probability that contraband evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The Court finds that based on the facts and circumstances of this case, the warrant affidavit provided sufficient indication that contraband—in the form of child pornography—would be found at Mr. Carlisle's residence.   Detective Morgan's affidavit describes his specialized knowledge and

training with respect to child exploitation and crimes against children.  (Doc. 25-1, p. 2).  Mr. Carlisle does not dispute that probable cause existed to search his computer for evidence that he enticed a minor to engage in illegal sexual conduct.  His argument that probable cause expired once evidence of the enticement was found is unconvincing.  Probable cause existed to search Mr. Carlisle's computer for evidence of child pornography.

Assuming for argument's sake that the search warrant was overbroad or lacking in probable cause, the Court finds that the evidence obtained from Mr. Carlisle's home is still admissible under the good faith exception to the exclusionary rule.  In *United States v. Haynes*, 160 Fed. Appx. 940 (11th Cir. 2005), a case which is almost factually identical to the present case, the defendant was charged with enticement of a minor and possession of child pornography.  The defendant moved to suppress evidence of the child pornography on grounds that the warrant was overly broad.  The defendant argued that "enticement conduct is different than child pornography, and there was no probable cause to support a search for child pornography." *Haynes*, 160 Fed. Appx. at 943.  While the Eleventh Circuit declined to rule on whether the warrant was overly broad, the Court held that the evidence of child pornography is admissible under the good faith exception to the exclusionary rule.  *Id*. at 944 (citing *United States v. Leon*, 468 U.S. 897 (1984)).

> *Leon* stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported

9

by probable cause. . . .   Thus, suppression is necessary only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*Haynes*, 160 Fed. Appx. at 944 (quoting *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (internal citations and quotations omitted)).

The *Haynes* court concluded that the officers acted in reasonable reliance on the warrant and noted that the defendant did "not even argue, much less show, that any of the exceptions to the good faith doctrine applie[d]." *Haynes*, 160 Fed. Appx. at 944. Mr. Carlisle likewise fails to argue that any exceptions to the good faith doctrine apply. Mr. Carlisle has not alleged or produced evidence that Detective Morgan was "dishonest or reckless" in preparing the warrant affidavit. Nor has Mr. Carlisle demonstrated that the officers conducting the search "could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* (quoting *Martin*, 297 F.3d at 1308). The magistrate judge correctly concluded that evidence of child pornography on Mr. Carlisle's computer is subject to the good faith exclusionary rule.

### 2.   Execution of the warrant under Alabama Rule of Criminal Procedure 3.10

Mr. Carlisle asserts that law enforcement violated Alabama Rule of Criminal Procedure 3.10 because the search warrant was not executed within ten days. (Doc. 12, pp. 1–2; Doc. 24, pp. 3–4, 8). Rule 3.10 states:

The search warrant shall be directed to and served by a law enforcement officer, as defined by Rule 1.4(p). It shall command such officer to search, within a specified time not to exceed ten (10) days, the person or

place named for the property specified and to bring an inventory of said property before the court issuing the warrant.

Ala. R. Crim. P. 3.10.  Mr. Carlisle urges the Court to define "execute" under Rule 3.10 to mean the date law enforcement performed forensic analysis on the computer. Mr. Carlisle argues that law enforcement had no idea whether the items seized contained any illicit contraband prior to the expiration of ten days, and nothing in the warrant indicated that forensic analysis would require an extended retention of the items seized.  (Doc. 24, p. 3).

In *Hatfield v. McDaniel*, 2012 WL 5187770 (M.D. Ala. 2012), the Court interpreted the requirements of Ala. Code § 15-5-12, which is now Alabama Rule of Criminal Procedure 3.10, as it relates to the seizure of computers and the analysis of electronically stored information.  The Court determined that seizure is the date that an item is physically seized and taken into police custody.  The *Hatfield* Court explained:

> Although the term "execute" is undefined in § 15-5-12, usage of the term suggests a search warrant is executed when the described property is physically seized and taken into police custody.  In the context of electronically stored information, that would mean that the warrant is executed when the computer is seized, not when the files are accessed.

*Hatfield*, 2012 WL 5187770 at *6.

The warrant in the present case was issued on July 31, 2013.  (Doc. 25-1, p. 1). Law enforcement executed the search warrant and seized the computer and related devices on August 6, 2013.  (Doc. 12, p. 1; Doc. 23, Defendant's Exhibit 2).  Thus,

11

under Ala. Code § 15-5-12, the warrant was executed within 10 days pursuant to Alabama Rule of Criminal Procedure 3.10.[1]  Regarding Mr. Carlisle's contention that the warrant should have indicated that extended retention of the items seized may be necessary, the Court finds that no such disclosure requirements exist under the Alabama Rules of Criminal Procedure.   Nonetheless, the warrant affidavit clearly indicated that items seized may be retained for analysis at a later date.   (Doc. 25-1, p. 10 – Attachment B) ("In the execution of this warrant, the agents may seize all computers and computer-related media to be searched later by a qualified examiner in a laboratory or other controlled environment.").

### 3.   441-day delay

Mr. Carlisle finally contends that, even if the seizure of his computer was initially valid, the 441-day delay between the seizure of the computer and the forensic analysis of the copy of the hard drive unreasonably infringed his possessory interests in the information contained on the hard drive and thus rendered the seizure of the hard drive unreasonable under the Fourth Amendment.  The Court agrees.

The Fourth Amendment provides "[t]he right of the people to be secure . . . against unreasonable searches and seizures."  U.S. CONST. amend. IV.  A seizure of property occurs "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113

---

[1] At the suppression hearing, Mr. Carlisle argued that the warrant is also untimely under Federal Rule of Criminal Procedure 41(e), which requires execution of warrants within 14 days.  (Doc. 23, p. 38). The Court need not address this argument because, as discussed above, the police executed the warrant within the window provided by both the state and federal rules.

(1984). "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012) (quoting *Jacobsen*, 466 U.S. at 124)).

To support his argument that the police unreasonably infringed his possessory interests in the hard drive, Mr. Carlisle relies, in part, on *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009). (Doc. 12, pp. 2–4). In *Mitchell*, the Eleventh Circuit considered the reasonableness of a 21-day delay between law enforcement's seizure of the defendant's hard drive and the issuance of a search warrant for the hard drive. *Mitchell*, 565 F.3d at 1348. The FBI agents involved in the case visited the defendant's home to conduct a "knock and talk." *Id*. at 1349. The defendant permitted the agents to enter his home, and the agents asked if the defendant's computer contained any child pornography, to which defendant replied, "yes, probably." *Id*. The agents then removed the computer's hard drive and left the defendant's residence. *Id*. Twenty-one days later, the agents obtained a search warrant for the computer hard drive. *Id*. at 1348–49.

In holding that the agents' delay was unreasonable, the Eleventh Circuit relied on *United States v. Martin*, 157 F.3d 46 (2nd Cir. 1998) and *United States v. Respress*, 9 F.3d 483 (6th Cir. 1993). In *Martin*, the Second Circuit held that "even a seizure based on probable cause is unconstitutional if the police act with unreasonable delay

in securing a warrant." *Martin*, 157 F.3d at 54.  In *Respress*, the Sixth Circuit found

that "even with the existence of probable cause to effect a seizure, the duration of the

seizure pending the issuance of a search warrant must still be reasonable." *Respress*,

9 F.3d at 488.  Based on these decisions, the Eleventh Circuit concluded that the delay

of 21 days between the seizure of the defendant's computer hard drive and the

issuance of a warrant to search the hard drive amounted to an unreasonable

interference with the defendant's possessory interest in the seized property. *Mitchell*,

565 F.3d at 1354.

In *Laist*, the Eleventh Circuit again considered the reasonableness of a delay

between the seizure of a defendant's computer and the issuance of a search warrant

for the computer.  Guided by *Mitchell*, the Court in *Laist* "identified several factors

highly relevant" to the question of whether a delay renders a temporary warrantless

seizure unreasonable under the Fourth Amendment.  *Laist*, 702 F.3d at 613.  These

factors, to be considered among the totality of the circumstances and on a case-by-

case basis, are: (1) "the significance of the interference with the person's possessory

interest," (2) the duration of the delay, (3) "whether or not the person consented to the

seizure," and (4) the government's legitimate interest in holding the property as

evidence[.]" *Id.* at 613–14 (citing *Mitchell*, 565 F.3d at 1351–52).

The Court in *Laist* stated that, "[w]hen balancing these interests to determine

the reasonableness of the government's actions, we are also obliged to 'take into

account whether the police diligently pursue[d] their investigation.'"  *Laist*, 702 F.3d

14

at 614 (quoting *United States v. Place*, 462 U.S. 696, 709 (1983)).  In doing so a court must consider, among other things, "the nature and complexity of the investigation and whether 'overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case[.]'"  *Laist*, 702 F.3d 614 (quoting *Mitchell*, 565 F.3d at 1353).  These factors, according to the Court "are the most relevant when we seek to balance the privacy-related and law enforcement-related concerns . . . at stake in cases of this kind."  *Laist*, 702 F.3d at 614 (internal citation and quotation marks omitted).

The United States argues that *Mitchell* and *Laist* do not apply here because the police seized Mr. Carlisle's computer pursuant to a valid search warrant.  (*See* Doc. 19, p. 8).  Thus, the Court is not tasked with analyzing the reasonableness of a delay between a warrantless seizure and the subsequent issuance of a warrant.  Instead, the Court must evaluate a delay between an initially reasonable seizure by warrant and the ultimate examination of the seized closed container.  For guidance in conducting this analysis, the United States suggested in oral argument that the Court should look to *United States v. Conrad*, 2013 WL 4028273 (M.D. Fla. Aug. 7, 2013), and *United States v. Ilonzo*, 2015 WL 5827598 (N.D. Ga. Oct. 6, 2015).

In *Conrad*, the Middle District of Florida held that a 5-month delay between the seizure of the defendant's computer pursuant to a valid warrant and the subsequent forensic examination of the computer was reasonable.  *Conrad*, 2013 WL 4028273, at *11.  The district court explained that *Mitchell* and *Laist* were "distinguishable and

15

inapposite" because law enforcement seized the computers in *Mitchell* and *Laist* without a warrant. *Id.* The district court then considered whether the 5-month delay in retaining the computer to conduct a forensic analysis was reasonable under the circumstances of the case. *Id.* Because the record contained evidence that law enforcement's delay in examining the computer could be attributed to "the amount of workload facing forensic examiners," and because the Court found "no evidence that the government was not diligent in its efforts to complete the forensic examination," the Court denied the defendant's motion to suppress the computer evidence. *Id.* at \*2, \*11.

In *Ilonzo*, the Northern District of Georgia agreed with the analysis in *Conrad* that *Mitchell* and *Laist* do not apply to seizures performed pursuant to a valid warrant. *Ilonzo*, 2015 WL 5827598, at \*20. Thus, as in *Conrad*, the Georgia court did not explicitly apply the *Laist* factors in assessing the reasonableness of the government's delay in completing the forensic examination of the defendants' computers. Instead, the Court considered the "multi-year complex nature of the investigation" and the fact that the defendants "ha[d] not requested the return of their computers." *Id.* at \*21, \*23.[2]  Based on these facts, the Court concluded that the government's delay was

---

[2] The Court in *Ilonzo* cited *United States v. Stabile*, 633 F.3d 219, 236 (3d Cir. 2011), for the proposition that "a defendant who does not seek the return of property cannot argue a Fourth Amendment violation [when the police retain the property for a prolonged period after seizure.]" *Ilonzo*, 2015 WL 5827598, at \*21. As the Court in *Ilonzo* correctly points out, however, "*Stabile*'s broad statement . . . is not binding." *Id.* Furthermore, the case from which *Stabile* derives its reasoning, *United States v. Johns*, 469 U.S. 478 (1985), does not, as suggested by the district court in *Ilonzo,* establish that a defendant must show that the government's delay had an "adverse affect [*sic*] on [his] legitimate interests in [the seized property] to assert a claim under the Fourth Amendment."

reasonable and denied the defendants' motions to suppress the computer evidence. *See id.* at *6, *20–21.

The Court agrees with the United States and with the courts in *Conrad* and *Ilonzo* that *Mitchell* and *Laist* are distinguishable from the present case because the Hoover police obtained a valid search warrant before they seized Mr. Carlisle's computer. Nevertheless, the reasonableness factors that the Eleventh Circuit identified in *Laist* may assist the Court in analyzing Mr. Carlisle's argument that Hoover's unjustified delay of 441 days before examining the copy of the computer hard drive for the evidence described in the warrant was unreasonable, requiring suppression of any evidence on the hard drive.

A seizure of property must be reasonable or else it violates the Fourth Amendment. *Laist*, 702 F.3d at 613. The factors that the Eleventh Circuit enumerated in *Laist*—the presence or absence of consent to the seizure, the government's diligence, the circumstances that diverted the government's attention from the seized property, "the significance of the interference with the person's possessory interest," the duration of the delay, and "the government's legitimate interest in holding the property as evidence"—all inform a court's analysis of the reasonableness of a delay in retaining a closed container pending an examination of the container's contents. *Id.* Above all, courts must "evaluate the totality of the circumstances presented by each case." *Id.* (citing *Mitchell*, 565 F.3d at 1351).

---

*See Ilonzo*, 2015 WL 5827598, at *21. As the United States conceded at oral argument, a defendant does not have to prove prejudice to establish a Fourth Amendment violation.

When the closed container at issue is a computer, a court must consider the fact that "computers are a unique possession, one in which individuals may have a particularly powerful possessory interest." *Laist*, 702 F.3d at 614.  As the *Mitchell* Court held, the hard drive of a computer "'is the digital equivalent of its owner's home, capable of holding a universe of private information.'"  *Mitchell*, 565 F.3d at 1352 (quoting *Kansas v. Rupnick*, 280 Kan. 720, 735 (2005)).  In addition to holding potential evidence of a crime, a defendant's computer hard drive contains, in almost every case, a significant amount of data that is outside the scope of the warrant, irrelevant to the alleged crime, and non-criminal in nature.  A defendant's possessory interest in this innocent information is significant, and the government's possession of a defendant's hard drive represents a significant interference with the defendant's possessory interest.[3]

In *Conrad*, the district court found that a 5-month delay between seizure and forensic analysis was reasonable, in part, because of "the amount of workload facing forensic examiners." *Conrad*, 2013 WL 4028273, at *11.  In *Ilonzo*, the district court took into account the "multi-year complex nature of the investigation" in concluding that the government's delay was reasonable.  *Ilonzo*, 2015 WL 5827598, at *23.[4]  The

---

[3] *Jacobsen* instructs that a person does not have a protectable Fourth Amendment interest in contraband, and law enforcement may retain evidence of criminal conduct, but law enforcement may not retain innocent material without implicating the protections of the Fourth Amendment.  *See United States v. Jacobsen*, 466 U.S. 109, 123–24 (1984).

[4] Similarly, in *United States v. Whaley*, the Eleventh Circuit considered the forensic analysts' "strained [resources]" in concluding that the government's 2–3-month delay between seizure and examination was reasonable.  415 Fed. Appx. 129, 135 (11th Cir. 2011).

record in this case contains no evidence that the forensic examiners were inundated with work or that Mr. Carlisle's investigation was particularly complex.[5]  Instead, the 441-day delay appears to be the result of oversight on the part of the Hoover Police Department.   On cross-examination, the government's witness, a sergeant in the Hoover Police Department, testified that the officer to whom the case initially was assigned left the department and her cases "just sat idle." (Doc. 23, p. 26).[6]  He also testified that he "[could not] explain why Detective Morgan didn't do anything" with Mr. Carlisle's computer once it became Detective Morgan's responsibility to "do all the forensics on it." (Doc. 23, pp. 25–26).

In cases where the evidence demonstrates that prolonged retention of seized property is unavoidable despite reasonable diligence on the part of the police, such a delay does not violate the Fourth Amendment.   This is not one of those cases. Although the United States undoubtedly has a legitimate interest in evidence of criminal conduct that may be present on the hard drive, the Court finds that the unjustified 441-day delay between the seizure of Mr. Carlisle's computer and the forensic examination of the hard drive constitutes an unreasonable infringement on Mr. Carlisle's possessory interests in the hard drive.  The Hoover Police Department

---

[5] The Court assumes that this evidentiary gap is not an oversight.  Counsel for the government are experienced and well-versed in the law.  If a reasonable explanation for the delay were available, counsel for the government no doubt would have provided it.

[6] It is not clear how much longer the police would have retained Mr. Carlisle's hard drive had Mr. Carlisle not filed a motion for specific discovery in state court seeking the results of the government's examination of the hard drive. (Doc. 32-2, pp. 2–3).

was not diligent, and the department, once it made the effort, was able to perform its analysis of the hard drive in a fairly short period of time, suggesting that there was nothing particularly complex about the examination.  Mr. Carlisle did not consent to the seizure.  Consequently, under *Laist*, the delay violated Mr. Carlisle's rights under the Fourth Amendment.  *See Laist*, 702 F.3d at 613.[7]

## IV.   CONCLUSION

For the reasons stated above, the Court **SUSTAINS** Mr. Carlisle's objection to the magistrate judge's recommendation and **GRANTS** Mr. Carlisle's motion to suppress the hard drive evidence.[8]  The Court **ACCEPTS** the magistrate judge's recommendation in all other respects and finds that the warrant was sufficiently particular and validly executed.  The Court asks the Clerk to please **TERM** Docs. 12, 21, and 32.

**DONE** and **ORDERED** this March 13, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[7] At oral argument, the United States acknowledged that the Court must apply a reasonableness test to assess the constitutionality of the seizure of Mr. Carlisle's computer, but, the United States argued, a seizure pursuant to a valid search warrant like the one in this case is presumptively reasonable. Even if that is so, on the record in this case, the presumption is rebutted.

[8] Counsel for Mr. Carlisle acknowledged that his motion to suppress does not extend to the cell phones that law enforcement seized from his house. (Doc. 23, p. 5).