FILED
2017 May-12 PM 12:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No. 5:16-cr-00024-MHH-HGD |
| | ) | |
| **MARK ANTHONY CARLISLE,** | ) | |
| Defendant. | ) | |

### SUBSTITUTE MEMORANDUM OPINION[1]

Defendant Mark Anthony Carlisle is charged in a four-count indictment with coercion or enticement of a minor in violation of 18 U.S.C. § 2422(b) and engaging in activities related to material constituting or containing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and 18 U.S.C. § 2252A(b)(2). (Doc. 1, pp. 1–3). On March 28, 2016, Mr. Carlisle filed a motion to suppress evidence that law enforcement seized in a search of Mr. Carlisle's residence. The search occurred on August 6, 2013. (Doc. 12). The magistrate judge assigned to the case held a hearing on Mr. Carlisle's motion on April 18, 2016. (*See* Doc. 23). On April 22, 2016, the

---

[1] This memorandum opinion replaces the memorandum opinion that the Court entered on March 13, 2017. (Doc. 38).

magistrate judge entered a report and recommendation denying Mr. Carlisle's motion. (Doc. 21). Mr. Carlisle timely filed an objection to the magistrate's report and recommendation. (Doc. 24). The Court held a hearing to explore Mr. Carlisle's objections on October 26, 2016. (Docs. 29, 31).

On March 13, 2017, the Court sustained in part Mr. Carlisle's objections to the magistrate judge's recommendation and granted Mr. Carlisle's motion to suppress. (Doc. 38). In particular, the Court found that the police seized Mr. Carlisle's computer pursuant to a valid search warrant but that the United States violated Mr. Carlisle's Fourth Amendment rights by waiting 441 days after law enforcement seized Mr. Carlisle's computer to perform a forensic analysis on the computer's hard drive. (Doc. 38, p. 20). On April 3, 2017, the United States filed a motion in which the United States asked the Court to reconsider its ruling. (Doc. 39). The Court held a supplemental evidentiary hearing on May 2, 2017. (Doc. 46). Based on evidence that the United States presented at the supplemental hearing and on arguments that the United States made in its motion to reconsider, the Court withdraws its March 13 opinion and enters this substitute opinion.

For the reasons discussed below, the Court overrules Mr. Carlisle's objections and denies Mr. Carlisle's motion to suppress. (Docs. 12, 21, 24, 32).

I. BACKGROUND

On July 31, 2013, a judge for the Circuit Court of Madison County, Alabama issued a search warrant for Mr. Carlisle's home, located at 426 Walnut Grove Road,

New Market, Madison County, Alabama 35761. The warrant authorized local law enforcement officers to search for "computers, cellular telephones or computer-related storage devices found thereon, as further described in Attachment A and Attachment B." (Doc. 25-1). Attachment A contains a photo of the residence located at 426 Walnut Grove Road, New Market, Alabama. (Doc. 25-1, p. 9). Attachment B contains a description of property to be seized and searched, including, but not limited to:

> Any and all records, documents, journals, and materials pertaining to an electronic solicitation of [a] child by computer and any visual depiction of a minor engaging in sexually explicit conduct, child pornography, child erotica, a sexual interest in children, or sexual activity involving children.
>
> Any and all records, documents, and materials that concern any internet accounts or any internet-related media.
>
> Any and all software that may be utilized to create, receive, distribute, store, modify, conceal, or destroy any of the evidence sought.

(Attachment B - Doc. 25-1, p. 10). Attachment B also states that "[i]n the execution of this warrant, the agents may seize all computers and computer-related media to be searched later by a qualified examiner in a laboratory or other controlled environment." (Doc. 25-1, p. 10).

Detective Brendan Morgan of the Hoover Police Department executed the affidavit in support of the search warrant. (Doc. 25-1, p. 2). Paragraph 2 of Detective Morgan's affidavit states:

> As will be shown, there is probable cause to believe that Mark Anthony Carlisle engaged in criminal conduct, 'Electronic Solicitation of a Child by Computer' as defined in 13A-6-122 and 'Possession and possession with intent to disseminate obscene matter containing visual depiction of persons under 17 years age' as defined in 13A-12-192 of the Code of Alabama, 1975, by means of communicating with a computer and a cellular telephone that is located at the aforementioned address.

(Doc. 25-1, p. 2).

In his warrant affidavit, Detective Morgan described the background of the investigation into Mr. Carlisle. (Doc. 25-1, p. 5). Detective Morgan's affidavit states that on May 15, 2013, an undercover police detective made contact with Mr. Carlisle in response to an advertisement that Mr. Carlisle placed on Craigslist. (Doc. 25-1, p. 5). According to the warrant affidavit, Mr. Carlisle believed that he was communicating with a parent who was soliciting her minor female child, under age 12, and two minor cousins, a female under age 12 and a male under age 10. (Doc. 25-1, p. 5). Law enforcement traced the Craigslist advertisement to 426 Walnut Grove, New Market, Madison County, Alabama 35761—which is Mr. Carlisle's residence and the place where the search was executed. (Doc. 25-1, pp. 5–6). The warrant affidavit describes the substance of the on-line communications between Mr. Carlisle and the undercover agent. In the course of roughly ten separate communications between March 23, 2013 and July 6, 2013, Mr. Carlisle describes the sexual conduct he wished to engage in with the minor children. (Doc. 25-1, p. 6). Mr. Carlisle also forwarded a photo of his face and genitals to the undercover agent. (Doc. 25-1, p. 6).

Detective Morgan's affidavit explains that based on his training and experience, "[t]hose who have demonstrated an interest or preference in sexual activity with children or in sexually explicit visual images depicting children are likely to keep secreted, but readily at hand, sexually explicit visual images depicting children." (Doc. 25-1, pp. 7–8). The affidavit also explains that "[p]ersons trading in, receiving, distributing or possessing images or movies of child pornography often have copies of those files on their computer's hard drive or computer-related media." (Doc. 25-1, p. 7).

On August 6, 2013, law enforcement executed the search warrant and seized numerous items from Mr. Carlisle's home, including a Gateway computer, two cell phones, a camera, and several thumb drives, floppy discs, and CDs. (Doc. 23, Defendant's Exhibit 2). On August 14, 2013, law enforcement made an image of the Gateway computer's hard drive. (Doc. 23, p. 18). An image is an exact copy of a computer hard drive. (Doc. 23, pp. 18–19). On August 16, 2013, the computer was placed in a property room at the Hoover Police Department; the computer is still there. (Doc. 23, p. 18). On July 29, 2014, Mr. Carlisle filed a motion in the Circuit Court of Jefferson County, Alabama in which Mr. Carlisle sought the results of the government's forensic examination of the property that the government seized from his home. (Doc. 32-2). In response to Mr. Carlisle's motion, the state district attorney's office inquired into the status of Mr. Carlisle's case. (*See* Doc. 47, p. 134).

The Hoover Police Department did not complete its forensic analysis of the computer hard drive until October 15, 2014, more than one year after the computer was seized. (Doc. 23, p. 31; Doc. 23, Defendant's Exhibit 3). Testimony reflects that the agent who conducted the initial investigation of this case left the Hoover Police Department for other employment. (Doc. 23, p. 23; *see also* Doc. 47, p. 80). The agent's replacement, Detective Morgan, was the individual who would have been responsible for performing forensic analysis of the computer, but, in time, he also left his employment with the Hoover Police Department. (Doc. 23, p. 26). In the hearing before the magistrate judge, another officer involved in the case, Lieutenant Keith Czeskleba, testified that aside from personnel turnover, he could not account for the delay between the time the computer was seized and the forensic analysis of the computer was performed. (Doc. 23, pp. 26, 30). He stated that, after the officer to whom the case initially was assigned left the department, her cases "just sat idle." (Doc. 23, p. 26). Lieutenant Czeskleba subsequently filed an affidavit in which he stated that, "[d]ue to a high number of devices to be examined and there being at most three full-time employees, the back log [during 2013 and 2014] was approximately one year." (Doc. 33-1, ¶ 4).

At the May 2, 2017 supplemental hearing, the United States presented testimony from Detective Morgan; from the manager of the forensic examination facility responsible for examining Mr. Carlisle's computer, Darren Barnes; and from Justin Cole, the forensic examiner who replaced Detective Morgan. Agent Barnes and

6

Detective Morgan testified that there was an average backlog at the forensic examination facility of at least a year. (Doc. 47, pp. 29, 78). Agent Barnes stated: "We had more devices submitted to be examined than we had people to do the exams." (Doc. 47, p. 29).

Mr. Cole testified that, when he took over for Detective Morgan, he "was unaware [that Mr. Carlisle's] case hadn't been worked, so it probably would not have been touched" had the district attorney's office not inquired about the status of Mr. Carlisle's case. (Doc 47, p. 134). Agent Barnes explained that in the 2013–2014 timeframe, the electronic crimes task force used an Excel spreadsheet to keep track of devices. The task force has since created a database to track the devices delivered to the task force for analysis. (Doc. 47, p. 24).

## II. DISCUSSION

Mr. Carlisle presents two arguments in support of his motion to suppress. First, he contends that the search warrant violates the Fourth Amendment because it is not sufficiently particular to establish probable cause that he possessed child pornography. (Doc. 12, p. 8; Doc. 24, pp. 9–11). Second, Mr. Carlisle argues that even if the search warrant was valid at its inception, the 441-day delay between law enforcement's seizure of his computer and the forensic analysis of a copy of the hard drive amounts to an unreasonable seizure under the Fourth Amendment. (Doc. 12, pp. 2–8; Doc. 24, pp. 4–6). As part of his second argument, Mr. Carlisle argues that the search warrant

was not timely executed under Alabama Rule of Criminal Procedure 3.10. (Doc. 12, pp. 1–2; Doc. 24, pp. 3–4, 8).

    1.    **Particularity of the warrant affidavit**

Mr. Carlisle contends that "there is no basis to believe from the affidavit that any of the items sought and/or seized would contain child pornography." (Doc. 12, p. 8). Mr. Carlisle asserts that "this is an exploratory, general warrant, based upon speculation without any independent investigation" and that "there is no information [contained in the warrant affidavit] that any computers at the residence were used to actually view or download any illicit material." (Doc. 12, p. 8). The Court disagrees.

Detective Morgan's affidavit states that based on his training and experience, "[t]hose who have demonstrated an interest or preference in sexual activity with children or in sexually explicit visual images depicting children are likely to keep secreted, but readily at hand, sexually explicit visual images depicting children." (Doc. 25-1, p. 7). The warrant affidavit describes how Mr. Carlisle demonstrated an interest or preference in sexual activity with children by posting an internet advertisement on Craigslist from his home computer and communicating with an individual who he believed was a parent soliciting her minor child and minor niece and nephew for sexual conduct. (Doc. 25-1, p. 5). In addition, Mr. Carlisle indicated in his communications with the undercover agent the sexually explicit activities he would like to see the children engage in, with an emphasis on watching them, and Mr. Carlisle stated that he had previously sought out visual images of sexually explicit

material containing children. (Doc. 25-1, p. 6). For example, Mr. Carlisle stated that "the guy from bham [Birmingham] that used to send me pics of his 6yr old did it wrong. He took only pics of her when she was sleeping [b]ut they were hot." (Doc. 25-1, p. 6).

The Eleventh Circuit has recognized that direct evidence or first-hand observation of a crime is not required to establish probable cause for a search warrant. *United States v. Jenkins*, 901 F.2d 1075, 1080–81 (11th Cir. 1990) (quoting *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982) ("'[T]he nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation.'")) (alteration provided by *Jenkins*); *see also Schaff v. United States*, 2014 WL 3925280, *4 (S.D. Ga. 2014) (citing *United States v. Davis*, 589 F.2d 904, 906 (5th Cir. 1979) ("Similar evidence not specified in the warrant can still be seized if it had a sufficient nexus to the crime being investigated.")). The Eleventh Circuit has also permitted warrant affidavits to draw limited inferences about criminal conduct based on the specialized knowledge and experience of law enforcement. *Jenkins*, 901 F.2d at 1081.

In *Jenkins*, the warrant affidavit included statements by an experienced FBI officer that individuals who commit theft are likely to keep the stolen items in their homes. *Jenkins*, 901 F.2d at 1081. In crediting the statements and finding that probable cause existed for a search of the suspect's home, the Court noted that (1) the affidavit established probable cause that the suspect committed theft and (2) the

9

officer had extensive experience investigating this type of crime. *Id.* ("The affidavit stated that Agent Gerald L. Jones, the veteran FBI agent who advised Agent Todd about the likely hiding place of the contraband, had spent ten of his seventeen years with the FBI investigating bank robbery/burglary matters."). "These combined facts would warrant a person of reasonable caution to believe that a search of Jenkins' home would uncover evidence of the theft." *Id*.

The key question in the probable cause inquiry is whether "there is a fair probability that contraband evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Court finds that based on the facts and circumstances of this case, the warrant affidavit provided sufficient indication that contraband—in the form of child pornography—would be found at Mr. Carlisle's residence. Detective Morgan's affidavit describes his specialized knowledge and training with respect to child exploitation and crimes against children. (Doc. 25-1, p. 2). Mr. Carlisle does not dispute that probable cause existed to search his computer for evidence that he enticed a minor to engage in illegal sexual conduct. His argument that probable cause expired once evidence of the enticement was found is unconvincing. Probable cause existed to search Mr. Carlisle's computer for evidence of child pornography.

Assuming for argument's sake that the search warrant was overbroad or lacking in probable cause, the Court finds that the evidence obtained from Mr. Carlisle's home is still admissible under the good faith exception to the exclusionary rule. In

*United States v. Haynes*, 160 Fed. Appx. 940 (11th Cir. 2005), a case which is almost factually identical to the present case, the defendant was charged with enticement of a minor and possession of child pornography. The defendant moved to suppress evidence of the child pornography on grounds that the warrant was overly broad. The defendant argued that "enticement conduct is different than child pornography, and there was no probable cause to support a search for child pornography." *Haynes*, 160 Fed. Appx. at 943. While the Eleventh Circuit declined to rule on whether the warrant was overly broad, the Court held that the evidence of child pornography was admissible under the good faith exception to the exclusionary rule. *Id.* at 944 (citing *United States v. Leon*, 468 U.S. 897 (1984)). The court of appeals stated:

> *Leon* stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. . . . Thus, suppression is necessary only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*Haynes*, 160 Fed. Appx. at 944 (quoting *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (internal citations and quotations omitted)).

The *Haynes* court concluded that the officers acted in reasonable reliance on the warrant and noted that the defendant did "not even argue, much less show, that any of the exceptions to the good faith doctrine applie[d]." *Haynes*, 160 Fed. Appx. at 944. Mr. Carlisle likewise fails to argue that any exceptions to the good faith doctrine apply. Mr. Carlisle has not alleged or produced evidence that Detective Morgan was

11

"dishonest or reckless" in preparing the warrant affidavit. Nor has Mr. Carlisle demonstrated that the officers conducting the search "could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* (quoting *Martin*, 297 F.3d at 1308). The magistrate judge correctly concluded that evidence of child pornography on Mr. Carlisle's computer is subject to the good faith exclusionary rule.

### 2. Execution of the warrant under Alabama Rule of Criminal Procedure 3.10

Mr. Carlisle asserts that law enforcement violated Alabama Rule of Criminal Procedure 3.10 because the search warrant was not executed within ten days. (Doc. 12, pp. 1–2; Doc. 24, pp. 3–4, 8). Rule 3.10 states:

> The search warrant shall be directed to and served by a law enforcement officer, as defined by Rule 1.4(p). It shall command such officer to search, within a specified time not to exceed ten (10) days, the person or place named for the property specified and to bring an inventory of said property before the court issuing the warrant.

ALA. R. CRIM. P. 3.10. Mr. Carlisle urges the Court to define "execute" under Rule 3.10 to mean the date law enforcement performed forensic analysis on the computer. Mr. Carlisle argues that law enforcement had no idea whether the items seized contained any illicit contraband prior to the expiration of ten days, and nothing in the warrant indicated that forensic analysis would require an extended retention of the items seized. (Doc. 24, p. 3).

In *Hatfield v. McDaniel*, 2012 WL 5187770 (M.D. Ala. 2012), the Court interpreted the requirements of Alabama Code § 15-5-12, which is now Alabama Rule

of Criminal Procedure 3.10, as it relates to the seizure of computers and the analysis of electronically stored information. The Court determined that seizure is the date that an item is physically seized and taken into police custody. The *Hatfield* Court explained:

> Although the term "execute" is undefined in § 15-5-12, usage of the term suggests a search warrant is executed when the described property is physically seized and taken into police custody. In the context of electronically stored information, that would mean that the warrant is executed when the computer is seized, not when the files are accessed.

*Hatfield*, 2012 WL 5187770 at *6.

The warrant in the present case was issued on July 31, 2013. (Doc. 25-1, p. 1). Law enforcement executed the search warrant and seized the computer and related devices on August 6, 2013. (Doc. 12, p. 1; Doc. 23, Defendant's Exhibit 2). Thus, under Alabama Code § 15-5-12, the warrant was executed within 10 days pursuant to Alabama Rule of Criminal Procedure 3.10.[2] Regarding Mr. Carlisle's contention that the warrant should have indicated that extended retention of the items seized may be necessary, the Court finds that no such disclosure requirements exist under the Alabama Rules of Criminal Procedure. Nonetheless, the warrant affidavit clearly indicates that items seized may be retained for analysis at a later date. (Doc. 25-1, p. 10 - Attachment B) ("In the execution of this warrant, the agents may seize all

---

[2] At the suppression hearing before Judge Davis, Mr. Carlisle argued that the warrant is also untimely under Federal Rule of Criminal Procedure 41(e), which requires execution of warrants within 14 days. (Doc. 23, p. 38). The Court need not address this argument because, as discussed above, the police executed the warrant within the window provided by both the state and federal rules.

computers and computer-related media to be searched later by a qualified examiner in a laboratory or other controlled environment.").

### 3. 441-day delay

Mr. Carlisle contends finally that, even if the seizure of his computer was initially valid, the 441-day delay between the seizure of the computer and the forensic examination of the computer hard drive's contents rendered the seizure unreasonable under the Fourth Amendment. As a result, Mr. Carlisle argues, the Court should suppress the evidence that the government obtained from the computer's hard drive.[3]

Several district courts have held that an extended delay between law enforcement's seizure of a computer and the ultimate forensic examination of the computer does not violate the Fourth Amendment where the government acts diligently and the delay is caused by "the amount of workload facing forensic examiners." *See United States v. Conrad*, 2013 WL 4028273, *11 (M.D. Fla. Aug. 7, 2013); *see also United States v. Ilonzo*, 2015 WL 5827598, *23 (N.D. Ga. Oct. 6, 2015) (taking into account the "multi-year complex nature of the investigation"); *United States v. Lovvorn*, 2012 WL 3743975, at *6 (M.D. Ala., Apr. 24, 2012) (finding that a 19-month delay between the lawful seizure of a computer and the forensic analysis of the computer was reasonable because "the delay was caused by nothing more than a backlog of cases"). These decisions suggest that, in instances where something other than a backlog of cases causes the delay, the government may

---

[3] Counsel for Mr. Carlisle acknowledged that his motion to suppress does not extend to the cell phones that law enforcement seized from his house. (Doc. 23, p. 5).

violate the Fourth Amendment by retaining a defendant's computer for an extended period of time.

At the supplemental hearing, Detective Morgan and Agent Barnes testified that the 441-day delay in Mr. Carlisle's case was caused by a "massive backlog" of "[a]t least a year." (Doc. 47, p. 78). Agent Barnes testified that "we d[id] not have administrative support at the lab, especially in 2013 and 2014" and that Detective Morgan was often "the only one in the lab, and he also had to answer the phone or stop to do an intake if an officer came in . . . with evidence to be examined." (Doc. 47, pp. 21-22). On the other hand, Mr. Cole testified that he was "unaware [that Mr. Carlisle's] case hadn't been worked" until the state district attorney's office brought the case to his attention. (Doc. 47, p. 134). Agent Barnes explained that the lab tracked devices on an Excel spreadsheet, but the Court infers from Mr. Cole's testimony that task force agents either did not consult the spreadsheet regularly, or Mr. Carlisle's device was not listed on the spreadsheet. The Court reasonably infers that Mr. Carlisle's case escaped Mr. Cole's notice at least in part because the task force's case-management system was inadequate.

Mr. Cole's testimony creates a question as to whether the government's delay in examining Mr. Carlisle's computer may be attributed to "nothing more than a backlog of cases," or whether the delay is the product of an inadequate record-keeping system. Whereas in *Conrad* the record contained "no evidence that the government was not diligent in its efforts to complete the forensic examination," here the record

indicates that the task force may not have put a sufficient record-keeping protocol in place, and that administrative deficiency may have caused or contributed to the delay in the analysis of the hard drive of Mr. Carlisle's computer. *Conrad*, 2013 WL 4028273, at *11. There is no evidence of ill-intent in the task force's selection of an inadequate case-management protocol. The task force may have been unable to devote more effort to optimizing its case-management system because of its lack of personnel and surplus of cases. *See* p. 7, above. The task force now uses a computer database to track devices awaiting examination. (*See* Doc. 47, p. 24).

On this record, the Court need not decide whether the government violated the Fourth Amendment by retaining Mr. Carlisle's computer for 441 days before conducting the forensic examination because suppression is inappropriate even if there was a Fourth Amendment violation. *Herring v. United States*, 555 U.S. 135, 139–40 (2009).[4]

In *Herring v. United States*, the United States Supreme Court "accept[ed] the parties' assumption that there was a Fourth Amendment violation" but ultimately affirmed the Eleventh Circuit's denial of the defendant's motion to suppress, explaining that "[t]he fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." *Herring*, 555 U.S. at 139–40. According to the Supreme Court, the "extreme sanction of exclusion . . . applies only

---

[4] See *Morse v. Frederick*, 551 U.S. 393, 431 (2007) (Breyer, J., concurring in part and dissenting in part) ("[I]f it is not necessary to decide more, it is necessary not to decide more.") (internal citation and quotation marks omitted).

16

where it results in appreciable deterrence" of future Fourth Amendment violations. *Id.* at 140–41 (citations and internal quotation marks omitted). In addition, according to the Supreme Court, "the benefits of deterrence must outweigh the costs." *Id.* ("We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence.") (citation and internal quotation marks omitted). The exclusionary rule is "trigger[ed]" only where the Fourth Amendment violation is the result of "deliberate, reckless, or grossly negligent conduct, or in some cases recurring or systemic negligence" on the part of the police. *Id.* at 144.[5] "Isolated negligence attenuated from the arrest" does not justify suppression. *Id.* at 136.

Here, the record indicates that the task force waited 441 days to perform a forensic examination of the hard drive from Mr. Carlisle's computer because of a lack of personnel and other resources, a heavy caseload, and an inefficient case-management system. *See* pp. 7, 16, above. To the extent that these factors are part of a pattern of "recurring or systemic negligence"—another matter which the Court need not decide—such negligence is ascribable to the legislative body responsible for funding the task force, not to the Hoover Police Department or the employees of the

---

[5] The Supreme Court in *Herring* distinguished between police misconduct and misconduct on the part of a judicial employee. According to the Supreme Court, "a mistake made by a judicial employee could not give rise to exclusion" because "[t]he exclusionary rule was crafted to curb police misconduct rather than judicial misconduct" and because "there [was] no basis for believing that application of the exclusionary rule . . . would have any significant effect in deterring [judicial] errors." *Herring v. United States*, 555 U.S. 135, 142 (2009).

17

task force.  Moreover, the task force already has corrected the record-keeping deficiency on its own.  Thus, application of the exclusionary rule would "provide marginal deterrence" with respect to the police.  *Herring*, 555 U.S. at 141.

Under *Herring*, exclusion is an "extreme sanction" that has historically applied where police engaged in a "flagrant or deliberate violation of rights."  *Herring*, 555 U.S. at 144.  To justify exclusion, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Id.*  Given the evidence that the forensic examination facility was understaffed and overworked, and even assuming that Mr. Carlisle's case was not the only case to slip through the cracks, the government's 441-day delay on the record in this case does not warrant exclusion.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Mr. Carlisle's motion to suppress the hard drive evidence.  The Court asks the Clerk to please **TERM** Doc. 39.

**DONE** and **ORDERED** this May 12, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE